We will hear argument now in the case of United States v. Hancock. Ms. Ramee Good morning, Your Honors. May it please the Court, my name is Colleen Ramee and I now stand before you in support of the United States v. Hancock case. I am here on behalf of Patrick Hancock today. Passive resemblance alone does not a representation make, that is what we are asking this Court to find. This case poses a simple question despite the briefing. It comes down to whether or not dressing as a police officer with a subjective hope to deceive violates Indiana law. As I believe the government agrees, the question turns on the meaning of represents in the statute. What we have here are facts found by the District Court that essentially amount to someone dressing albeit convincingly as a police officer and shopping. We have no facts that were found that he had any interaction with any other human being or otherwise asserted himself as an officer. The District Court said when Mr. Hancock objected to the finding that he had violated Indiana law, the District Court said, you have to do more than just wear a badge. The Court said, yeah, you did more than just wear a badge, but didn't explain what he did. He actually, the actus reus of this crime. The bottom line is here that, given how we expect civilians to respond to police officers in their presence, particularly in an age when civilians often have the right to carry that the act in this case was putting on the uniform or rather the badge and the equipment quite distinctive, recognizable as law enforcement. Because your honor, that isn't. It's a nonverbal representation to the people, everybody he's going to be around. Sure. And it's it. Well, I wouldn't agree that it's a representation. It is a nonverbal. It communicates something. I agree with that. There is a communication. However, there is you need to have something more. So this in this case, if this is enough that and then it's a mere lie, right? It is a mere falsehood. There is nothing more that is being done. So Mr. Hancock did nothing that would have affected anyone else's behavior around him. And, you know, simultaneously upon confrontation, he identified himself using his real name and told the police officers he was not a cop. So he never tried to exert any type of authority or do anything that an average citizen wouldn't be able to do as a police officer. In order to make this to read the statute in a constitutional manner, you have to re-represent as requiring some sort of interaction or engagement with another human being. And the jury instructions that Mr. Clark filed recently only support that reading. The jury instructions say that you have the defendant has to falsely represent himself to a specific person that necessarily requires some affirmative act. It's not just he's susceptible of being mistaken for a police officer. When I was thinking about this case in preparation, it made me wonder, what if Mr. Hancock had never left his house? What if he was dressed identically to how he was found in Costco, but instead he hadn't left the house yet? And officers were looking for something and they knocked on his door and he opens the door and is standing there in full outfit and he says, oh, I'm Patrick Hancock. I'm not a cop. Has he violated the Indiana statute when he hasn't left the house? Let's assume the answer is no. But he's, he has left the house. He apparently has visited several Costco stores that day and he has, is at least at the one in Avon where it would be reasonable to expect everybody around him who notices him to think that he's a cop and to behave accordingly. You remember the old David Crosby song, Almost Cut My Hair? No. Well, you may be a little young for it. It goes back to the 70s, but it increases my paranoia, like looking in my mirror and seeing a police car. So all of us have that kind of reaction, right? Sure. And, you know, the question is, I guess there has to be a line drawn and so is going out into public that line, I would argue that that's not a rational place to draw the line because I still believe that that is a mere lie. So perhaps the distinction might, it's the character and attributes of the individual that, that are being presented. And what might draw a distinction here, which may not be to your client's advantage, is the gun and the badge versus utility belt, professional type uniform. Because individuals go to Costco all the time and see security that wouldn't have the gun and the badge, but he did have the gun and the badge, isn't that a problem for him? That just, in my opinion, that just goes to the authenticity of his costume, to the believability of it, which I believe you can, the district court correctly inferred intent to deceive. You know, if he was wearing a sticker that said sheriff on it and that was it, we might not, like, you know, we might not be able to infer that he really intended for people to believe that he was a sheriff. So the fact that it was a believable costume versus a non, you know, a non-authentic costume indicates an intent. It doesn't, it doesn't add to the actus reus here. And so, you know, it doesn't change what he did. And what he did was just exist in this costume and walk around. So, you know, then the question would be, well, what if he was in a park dressed as a cop, you know, dressed as a cop? What if he was in his backyard? Is that public enough? I mean, you get to these bizarre questions of where the line is and... So where do you think it should be? The line I think it should be is that you need to engage in some sort of interaction with someone. So, I mean, there is no one in this, in the facts here that we have that he made a representation to. What's your best Indiana authority for that proposition? Indiana, like, so as, you know, discussed in the briefs, there really isn't any Indiana case law on point to exactly what representation means. All of the Indiana case law that I was able to find on this statute is consistent with my... With the Indiana case law. With the Indiana case law. And we have a district judge who just takes the Indiana statute as written without making up extra rules. What's wrong? Well, the problem is that the way that this is interpreted under the government's reading and the way the district court applied it criminalizes mere lies. And that is what Alvarez says is unconstitutional. Everywhere it's been applied in Indiana, the person, it's not been a mere lie. So Indiana, Indiana's actual application of the law is not... So do you think our decision in Bonin is incorrect? Excuse, I'm sorry. Do you think our decision in Bonin needs to be overruled? No, Your Honor. As inconsistent with Alvarez? No, Your Honor. So how is the state statute different from the one we said in Bonin was valid? If the government's version, if the government and the district court's interpretation of it is correct, then the state statute doesn't have the acts as such requirement. So the acts as such requirement in Bonin, like in the federal statute, 912, requires not only a pretense, but the acts as such. And Bonin said that acts as such brings this within constitute, like makes it past constitutional muster. It says it requires an intentional action in the pretended character sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct. We don't have that in this case. I don't see what's missing here. We don't have, we don't have any action that you sought to... You dress up as an officer and walk around and act like an officer. Uh-huh. That's certainly intentional. And there is no person that he has sought to deceive to follow a course of conduct. I did want to address Judge Hamilton's point about, you know, he's maybe gone to other Costco's that day. I don't believe the record is clear that he was visiting other Costco's in that same day. Um, I, my, my, you know, my review of the record indicated that he resembled to some extent someone who had been passing bad checks at Costco. They suspected him of being this person. I didn't see... He has a long record of passing bad checks. Oh, sure. Yeah. Absolutely. And he has other instances where he has actually falsely represented himself. Yes. But every time you look at any of those convictions, he has actively asked someone to comply with his orders. Or he's tried to get, obtain something from this false presentation of himself as an officer. In this case, there isn't any evidence that while he was carrying the gun, he made any active representation of himself to another person. And that is why the court should, um, vacate his sentence and remand for resentencing. Could I ask you, um, does, you seem to be asking us, at least in part, to declare the state statute unconstitutional. It would be very odd to do that in this procedural process, among other things, without any input from the Indiana Attorney General. That's fair, Your Honor. Um, I think the cleanest way to resolve this case is to hold that, as, you know, as we've been discussing, representation requires an affirmative act, um, more than just dressing in a costume. Um, and then, and then I think that that, then it's a much closer question as to whether or not this statute is, is constitutional. Um, and it arguably, it much more closely tracks the federal statute. Without it, I, that, I mean, essentially the reason that there is this constitutional argument in there is because if you're going to, if, if we interpret it the way that it has been applied in this case, it really does cause these constitutional issues, um, of criminalizing mere lies to the extent that you're communicating anything just by dressing in a, in a costume. And if there are no further questions at the moment, I'll reserve the remainder of my time for a moment. Certainly, Counsel. Thank you. Mr. Clark. Colin Clark, on behalf of the United States. I'd like to touch on something Judge Hamilton mentioned before getting to my, more or less, canned opening. Under 28 U.S.C. 2403B, this Court may choose to invite the Indiana Attorney General's Office to intervene to defend the constitutionality of its own state's law. This Court has the power to do that. But let's start with the big question. What is representation? I was walking home after working on this case to the garage where I parked my car, which is a few blocks away, and I saw a protest about the Middle East. There are about a hundred people in the crowd, no David Crosby, and I saw two police cars and four or five police officers in the road, and the police officers in full uniform were simply leaning against their cars. And I got to think, thinking about, well, what are they doing? They're just standing there. And I believe what they were doing is they were displaying authority, the state-sanctioned authority to kill at a moment's notice. That is expressive conduct. There's speech and non-speech elements to it. And it's an expression that any 6- or 86-year-old would understand. It's the simultaneous display, Judge Brennan, of a badge and a gun. People know what that means. When Dirty Harry is suspended, what's he asked to turn in? The two markers of what a police officer is. There are absolutely going to be gray lines as to what constitutes representation. That is impersonating, as the title of the law suggests, impersonating a police officer. That display is enough. And it is a compelling state interest. Indiana has an intense state interest in preventing the interference with the integrity of government processes. That is the protection of law and order in public spaces. Go to a mall, an airport, a movie theater, you're going to see police officers there just simply existing because they display authority. Now think about what you might do in a situation where there's a robbery or, God forbid, a mass shooting. Where seconds count. If someone runs up to a guy like Mr. Bonin or Patrick Hancock in an emergency, what are they going to do? Hancock is a felon with a gun. Seconds count. And in the Bonin case, there was an off-duty police officer working that movie theater that night. What if they had wasted that critical time by going to the fake cop instead of the real one? Now, the key to Alvarez, in my reading of it, was the availability of counterspeech to fix the problem. You can simply post on the Internet who won the Medal of Honor. And even if that's tough, you can basically do that. To the grandmother in the movie theater who's running up to a Patrick Hancock asking for protection in an emergency, what counterspeech could possibly be offered to her? And even if we could post an Internet site containing the stats of all of the local police officers, is that even a good idea considering the security concerns that would create? I'm sure most police officers would not want that in the public sphere. Mr. Clark, you sent us the Indiana Pattern jury instructions with an element falsely represented to blank, name person alleged. How would you fill that in in this case? Employees and customers of Costco, and I'd like to point this court to the Ferry case, Ferry v. State, which is an Indiana Court of Appeals case. And I will admit, this is something that I mentioned in passing. It's not a holding of the case. But if they discuss this very Pattern jury instruction, and I'm looking at 124 Northeast 3rd at page 116, and the way that trial judge wrote that instruction in, number three, falsely represented to employees at the Hamilton Center, Inc. And so, yes, you absolutely must represent that you are a police officer to another person. However, that person does not need to be a specific named individual, as I understand Indiana law. But again, I have not – this is not something that Indiana courts have particularly fleshed out. I just think that that's the most reasonable way to read the statute because, again, the gravamen deals with impersonation. And so when you are impersonating, anyone who can see you is affected by your choice to display the badge and the gun. So the defense tells us that's going to lead to all kinds of terrible confusion involving actors and exotic dancers and so on. Your thoughts? Well, they knighted Sir Lawrence Olivier for acting. They didn't arrest him for it. I think that I could go to the Tomshaw case. I could go to the Alvarez case. I could go to the Bonin case. I think in every single – What are you going to do when you go to these cases? I'm going to reference them. I'm sorry, sir. It's a verbal tick that's unfortunate. Referencing those few cases, they all mention the availability of trick-or-treaters and the like and people on a stage. And at the end of the day, they are not representing facts about themselves that they expect the others to believe. At the heart of parody or trick-or-treating or acting is the desire to temporarily trick the receiver of that communication and then to allow them to feel gullible once the sort of rug is pulled out from under them. And so the idea that if I try to deceive my neighbor by dressing up like a police officer on Halloween, if I did that in a way that intended to deceive them, I'm not going to get candy. I'm not going to get a standing ovation at the theater. The intent to deceive separates those – what I believe the Chappell case called ludicrous types of hypotheticals and what might actually happen in the real world. So with that, I'm going to move quickly to the narrow tailoring piece of this. In order for a statute to fail on First Amendment narrow tailoring grounds, I understand the cases to require that the alternative restriction be offered to the state that is, one, constitutional, two, less restrictive, and three, would at least be as effective in achieving the legitimate purpose being served. I hear of no alternative restriction that would be at least as effective. Here I'm told by my esteemed colleague that the – that you must act as a police officer in order to make it sort of within the bounds of free speech. I don't understand any of the cases to have that requirement. I don't know where that might even come from. In fact, when we talk about Alvarez, and I'm quoting briefly from the plurality opinion, and it's talking about the federal impersonation statute, it says even if that statute may not require proving an actual financial or property loss resulting from the deception, the statute itself is confined to maintaining the general good repute and dignity of government service itself. And so what we're talking about here is the interference with the office of government. And think about this in the context of, say, a 1001 prosecution where there is no fraud. There is but a false statement, but that false statement interferes with the government process. That is constitutional under the First Amendment. There's no act required under 18 U.S.C. 1001. It's but a word. And also, again, because this is expressive conduct, I don't even think we reach the strict scrutiny that this court decided that – it didn't reach the question, but it said it would be constitutional under either. If the court needs to reach the question, we firmly believe that it is expressive conduct under cases like O'Brien, not the higher form. To move briefly to the Beckles issue, which I think is the naughtiest piece of this case, I mentioned the prudential concern of the wrong sovereign defending the statute. I also mentioned that we waived, as the United States, our plain error argument on the First Amendment issue. This is a broad guideline that captures every American felony, and it doesn't require a conviction. It requires only that the offense, the weapons offense under 2K2, to be done in connection with some other American felony. That's a pretty broad guideline. And in the sentencing context, what is available to the defendant in terms of process is different in nearly every way to what a traditional conviction might allow that person to attack. There is, generally speaking, no availability of a motion to suppress. There's no apprendee requirement. There's no indictment, no grand jury, no speedy trial, and no confrontation. And traditionally, you cannot collaterally attack the convictions in your criminal history. So to assume that this must be an availability, an avenue that Mr. Hancock may raise does not seem like the logical conclusion based on this court's other cases, albeit none of them, strictly speaking, on point. And if Mr. Hancock, after he gets out of prison and is done with his supervision, wants to file a 1983 action and attaches PSR and an affidavit saying, I want to do it again, he'll certainly have standing under the 1983 context to attack the—given the Indiana's history. I'm not so sure of that. Well, you might have handled more 1983 cases than me, so I'll back off uncertainly and just suggest that it's a possibility. But let's get to another issue with the Beck— I take it, Mr. Clark, that Chief Judge Pratt did not say on the record in this case that her resolution of this particular guideline issue was not decisive. I put a lot of negatives in that question. Yeah, I'm sorry. Could you please rephrase? She did not indicate that the sentence did not depend on this guideline issue. Correct. There's no harmlessness issue in that I would have imposed, I think it was 48 months, regardless of this—there's nothing like that in the transcript. And 48 months had been the sentence the last time he'd impersonated a police officer? I thought it was 41. Okay. I think it was 48 this time. Okay. I could be wrong on that. I also want to point out that Beckles is tricky because an offender can be punished for engaging in protected speech. And during allocution, if the offender says, I'll do it again, under 3553A, that's going to go to future dangerousness, and you can increase a sentence for engaging in protected speech. And so in terms of line drawing, I feel like Beckles is the safer route to say that, generally speaking, you can't reach through this broad guideline to attack the validity of state statutes under the First Amendment. Briefly, dealing with overbreadth, the hypotheticals we've talked about, them briefly not being realistic or substantial, I'd like to simply point out that I don't think we've had a hypothetical yet where someone is engaging in protected speech. In the hypothetical that my esteemed colleague posed at the lectern, in that situation, Mr. Hancock had not intended to deceive the officer who knocked on his door. He, as I understood it, immediately said, I'm not a police officer, and so there's no intent to deceive. And to overturn the finding in this case, that Mr. Hancock had an intent to deceive, would require clear error, as that's a factual finding. And I don't see any basis to say that Judge Pratt had engaged in any clear error in finding by a preponderance that he had an intent to deceive. And I also would like to point out that on the factual basis, which was repeated in the transcript, in paragraph one, this is criminal doc 79, the Avon police were advised that an individual later identified as the defendant who had been using fraudulent checks at multiple Costco locations was at the store with a law enforcement badge and a firearm on his person. So again, in this case, the reason why police officers were called was because of the gun and the badge. He had been using fraudulent checks, although we don't know the timing in terms of whether it was all that day or not, but I can't see how that matters in the slightest. And I would like to point out one more thing. In the jury instruction and in the statute, there is a basis for a level, I believe a class six felony, a high level felony, for people who represent law enforcement and Department of Revenue employees. In the Department of Revenue section of the statute, it requires the Department of Revenue statute employee to be engaged in collecting property. So the Indiana legislature knows how to write a statute that requires an affirmative act, collects property from any person. They chose not to do this under this subsection. So unless there are any questions from the panel, I thank you for your time. Thank you, counsel. Mr. May, anything further? Just a couple of quick points on rebuttal, your honors. I'd like to respond to my colleague here. Certainly, causing confusion could be a problem when you're dressed as a police officer. But merely passively resembling a police officer does not rise to the level of making an affirmative representation that should carry felony penalties. The Bonin court was clear saying that Mr. Bonin, the statute was constitutional because they sought to cause a deceived person to follow some course he would not have pursued but for the conduct. In Bonin, that the individual had sought to deceive a movie audience to tolerate disruptive behavior and sought to deceive police into not taking action. In every other instance of any case that has been cited in all the briefing, someone has intended to alter conduct or obtain something that they weren't entitled to. It doesn't necessarily have to be material gain. It doesn't have to be financial benefit. But they are trying to get something that they're not entitled to. I guess the problem that you've posed for us in essence seems to me the nearly inevitable response of others in public to the gun, the badge, the uniform. Being, I guess, what, Your Honor? As a sufficient representation with sufficiently dangerous consequences or potential consequences that it would merit criminal treatment. Your Honor, I suppose anyone carrying around a gun in public presents an issue. That's a different issue. That's a different issue. Because if you're doing that and you're carrying a badge, you're communicating a whole lot else about your training, your responsibilities, the assistance you may be able to provide to a civilian in need, and so on. Sure, and if someone approaches you and asks for that assistance and you immediately say, oh, no, I'm not a cop, which is effectively what he did. I mean, I understand that that's not an ideal situation. But does that rise to an affirmative representation? What good does it serve to be able to say he can do this? It's a mere lie. And I think that that's what it really comes down to. Under the government's reading of the statute, it's criminalizing mere lies. And the Alvarez court and this court has said you can't do that. But one that poses dangers that a lie about a Congressional Medal of Honor does not. I don't know that, I mean, there is some potential dangers in that potentially people could be confused and ask for help, I guess. I guess I'm unclear as to what the added danger is posed by the individual. Thank you, Your Honor. Thank you, Counsel. The case is taken under advisement.